Porter, J.
This action was instituted in of the 24th section of the Black Code, (1 Martin's Dig. 622) which enacts that “intoxicating liquors shall not be sold to slaves, without a written permission from their master, and declares that any person violating that provision shall incur a penalty; and moreover, be answerable to the owner for *5 all damages which the master may suffer in consequence thereof.”
East'n District.
Feb. 1822.
The petition jdleges, that the defendant did, in violation of this law, sell to the slave J asmin, spirituous liquors, that by the use of them he became intoxicated, and that in consequence of said intoxication, he was drowned.
The defendant denied that he was liable, by reason of the allegations in tlie petition, and concluded his answer, by putting the plaintiff* on the strict proof of every thing necessary to support his action.
There was judgment against him, and he has appealed.
The defence has been presented to us in argument under the following divisions:—
1.That it is not proved that the illegal act complained of was done knowingly, by the defendant.
2. That the evidence does not prove that, the slave became intoxicated at the house of the defendant, and in consequence of the spirituous liquors he drank there.
3. That the damages suffered by the master, must be the direct and immediate consequence of the intoxication of the slave, and that in the present instance, the evidence does not establish that fact.
*6 L The evidence proves clearly that the defendant sold liquor to the slave of the. plaintiff, and this is sufficient^ to throw the burthen of proof on the defendant, that the act was done innocently. Were we tore-quire that the master, in an action of this kind, should prove that the seller of liquor knew the individual to whom he sold it was a slave; we would require evidence, that from the nature of the transaction, it is impossible in many cases he could give, and defeat entirely the object of the statute. The general rule is, that the burthen of proof lies on the person who has to support his case by proof of a fact, of which he is supposed to be cognizant. Phillip’s Evidence, edit. 1820, 150.
II. The principal witness swears, that he embarked at the market-house in a pirogue, with the slave Jasmin, and some other ne-groes; that they (the negroes) were sober when they set off, that when they came opposite the defendant’s residence they put to shore, went into his house, purchased liquor, drank it, remained there a quarter of an hour, and that they began to quarrel and fight as soon as they re-embarked; that Jasmir was *7 drunk, and that a short time after he was drowned. This proof is satisfactory to my mind, as it appears to have been to that of the judge who tried the cause, that the in* toxieation of the slave proceeded from the liquors procured and drank at the defendant’s shop. ■
The third and last point is the only one which has presented any difficulty. The defendant insists that the death of the slave was not the direct consequence of the intoxication, but resulted from the act of a third party threatening to flog him.
On this head the evidence is as follows :—
J. Soule, the witness vyho embarked in the pirogue with the slave Jasmin, swears, that after they left the shop of the defendant, and embarked on board the pirogue, the ne-groes began to quarrel, and finally to fight: that one of them fell twice into the river: that he (the deponent) finding his situation a dangerous one, called for help from a boat he saw at some distance, and that a Mr. Lartigue came to his assistance, and brought the pi-rogue to land. When they got on shore, Mr. Lartigue qbserved that lie would give them a flogging, and then they would behave them *8 selves. On hearing this, Jasmin jumped into the river, the witness jumped after him, blit was unable to save his life. Another of the • • negroes, who was also drunk, immediately en-deavoured to drown himself, but was prevented.
Lartigue confirms this testimony, except that his declaration to the negroes was, that if they did not behave themselves he would correct them.
This evidence shews, in a most striking point of view, the consequences that result from violating a wise and salutary law, which is founded alike on a regard for the interests of the master and slave. And the judgment of this court can only enable the defendant to discharge one of the responsibilities which he has incurred by this transgression. The defence which he sets up, cannot, in my opinion, be sustained. The bad conduct of the negroes in the boat, was the result of his, act : the necessity of approaching Lartigue was caused by it: and the justifiable threat of correction arose from the intoxication of the slaves, which we have already seen proceeded from a fault of the defendant.
*9 The case cited from Taunton’s Reports is 1 not law here, and the reasons given by the judges, who decided it are not satisfactory. It appears very strange that a man should be excused from the consequences of illegally frightening the horse of a traveller, because the driver was not skilful; when it is clear there would not have existed a necessity for exercising skill, had it not been for the act of the defendant, and but for that act, no damage would have been sustained.
In the well known case of the throwing of a squib, which was picked up and thrown by two other persons before it committed the injury on the plaintiff, it was held that the first thrower was responsible — that the new direction and force flowed out of the first force, and was not a new trespass. So here the act of Lartigue directly flowed from the original fault of the defendant, was occasioned byt it, and must be considered as making a part of it.
I think that the plaintiff has made out his case, under the law cited at the commencement of this opinion, and that the judgment of the parish court should be affirmed with costs.
*10 Mautin, J.
Nothing can be clearer than the position, that a person who, in this state, deals with a black man, exposes himself in case of his being a slave, to all the consequences which follow the dealing with a slave : the presumption being, that a black man is a slave; as by far the greatest proportion of persons of that colour are, in this state, held in slavery. There would be no possibility of publishing illegal acts relating to that species of property, if the khowlege of the actual Slavery of the negro was essentially to be proven in the trespasser.
" ⅛ The liquor which intoxicated the slave, having been furnished him in the defendant’s shop, he must be answerable for the consequences.
It is clear that the spirituous liquor which the plaffttiff’s slave obtained there, was the cause of his intoxication; as it appears in evidence,,that he proceeded from the shop to the boat, and that a short time after he fell in the water and was drowned.
It appears to me, that the drowning was the immediate consequence of the supply of spirits procured in the defendant’s shop, be must, of course, abide the consequence. 1 concur in judge Porter’s opinion.
Grymes for the plaintiff, Workman for the defendant.